UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

```
------------------------------------------------------------X
                                          :
IN RE YASMIN AND YAZ (DROSPIRENONE)       :    3:09-md-02100-DRH-PMF
MARKETING, SALES PRACTICES AND            :
RELEVANT PRODUCT LIABILITY                :    MDL No. 2100
LITIGATION                                :
                                          :    Judge David R. Herndon
------------------------------------------------------------X
TIFFINI C. BROOKS,                        :
                                          :
                  Plaintiff,              :    COMPLAINT AND JURY
                                          :    DEMAND
         v.                               :
                                          :    Civil Action No.: 3:11-cv-12495
BAYER HEALTHCARE PHARMACEUTICALS, :            DRH-PMF
INC., BAYER PHARMA AG, BAYER              :
CORPORATION, BAYER HEALTHCARE LLC,        :
BAYER HEALTHCARE AG, BAYER AG,            :
BERLEX LABORATORIES, INC., and            :
BERLEX INC.,                              :
                                          :
                  Defendants.             :
------------------------------------------------------------X
```

Plaintiff, by and through counsel, CHAFFIN LUHANA LLP, upon information and

belief, at all times hereinafter mentioned, alleges as follows:

## PARTIES AND JURISDICTION

1.     Plaintiff Tiffini C. Brooks is a resident and citizen of Batavia, Ohio.

2.     Plaintiff Tiffini C. Brooks was given samples and ingested Yasmin and suffered

injuries including, but not limited to, pancreatitis and gallbladder problems resulting in a

laparoscopic cholecystectomy on or about October 13, 2003 as a direct result of her use of

Yasmin.

1

3.      Plaintiff alleges an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4.      Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is, and at all relevant times was, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of New Jersey.

5.      Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. was formerly known as Berlex Laboratories, Inc., which was formerly known as Berlex, Inc. and BAYER HEALTHCARE PHARMACEUTICALS, INC. is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

6.      Upon information and belief, at all relevant times Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. has transacted and conducted business in the State of Ohio and in the State of Illinois, and derived substantial revenue from interstate commerce.

7.      Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. expected or should have expected that its acts would have consequences within the United States of America, in the State of Ohio, and in the State of Illinois, and derived substantial revenue from interstate commerce.

8.      Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. is the holder of approved New Drug Application No. 21-676 for YAZ.

9.      Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. markets Yasmin and YAZ in the United States.

10.     Upon information and belief, Defendant BAYER PHARMA AG is a

pharmaceutical company domiciled in Germany.

11.     Defendant BAYER PHARMA AG was formerly known as Bayer Schering

Pharma AG and is the same corporate entity as Bayer Schering Pharma AG.

12.     Upon information and belief, Bayer Schering Pharma AG was renamed BAYER

PHARMA AG effective July 1, 2011.

13.     Upon information and belief, Defendant BAYER PHARMA AG is the current

owner of the patent(s) relating to the oral contraceptive, Yasmin.

14.     Upon information and belief, Defendant BAYER PHARMA AG is the current

owner of the patent(s) relating to the oral contraceptive, YAZ.

15.     Defendant BAYER PHARMA AG manufactures drospirenone and ethinyl

estradiol, the progestin and estrogen contained in Yasmin, YAZ, and Ocella.

16.     Upon information and belief, Defendant BAYER PHARMA AG has transacted

and conducted business in the State of Ohio and in the State of Illinois, and derived substantial

revenue from interstate commerce.

17.     Upon information and belief, Defendant BAYER PHARMA AG expected or

should have expected that its acts would have consequences within the United States of America,

in the State of Ohio, and in the State of Illinois, and derived substantial revenue from interstate

commerce.

18.     Upon information and belief, and at all relevant times Defendant BAYER

PHARMA AG was in the business of and did design, research, manufacture, test, advertise,

promote, market, sell and distribute Yasmin and YAZ for use as combination oral contraceptives.

19.     Upon information and belief, Defendant BAYER CORPORATION is an Indiana

corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania

15205.

20.     Upon information and belief, Defendant BAYER CORPORATION is the sole

member of BAYER HEALTHCARE LLC, which owns 100% of Schering Berlin, Inc., which

owns 100% of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. As such,

Defendant BAYER CORPORATION is a parent of Defendant BAYER HEALTHCARE

PHARMACEUTICALS, INC.

21.     At relevant times, Defendant BAYER CORPORATION was engaged in the

business of researching, developing, designing, licensing, manufacturing, distributing, selling,

marketing, and/or introducing into interstate commerce, either directly or indirectly through third

parties or related entities, its products, including the prescription drugs Yasmin and YAZ.

22.     At relevant times, Defendant BAYER CORPORATION conducted regular and

sustained business in the State of Ohio and in the State of Illinois, by selling and distributing its

products in the State of Ohio and in the State of Illinois and engaged in substantial commerce

and business activity in the State of Ohio and in the State of Illinois.

23.     Upon information and belief, Defendant BAYER HEALTHCARE LLC is a

limited liability company duly formed and existing under and by the virtue of the laws of the

State of Delaware, with its principal place of business located in the State of New York.

24.     Upon information and belief, at all relevant times, Defendant BAYER

HEALTHCARE LLC has transacted and conducted business in the State of Ohio and in the State

of Illinois, and derived substantial revenue from interstate commerce.

25.     Defendant BAYER CORPORATION is the sole member of Defendant BAYER

HEALTHCARE LLC and as such, for purposes of establishing diversity of citizenship,

Defendant BAYER HEALTHCARE LLC is a citizen of Indiana and Pennsylvania.

26.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC expected or should have expected that its acts would have consequences within the United States of America, in the State of Ohio, and in the State of Illinois, and derived substantial revenue from interstate commerce.

27.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute Yasmin and YAZ for use as combination oral contraceptives.

28.     Upon information and belief, Defendant BAYER HEALTHCARE AG is a company domiciled in Germany and is the parent/holding company of Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC, BAYER PHARMA AG, BERLEX LABORATORIES, INC. and BERLEX, INC.

29.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG has transacted and conducted business in the State of Ohio and in the State of Illinois, and derived substantial revenue from interstate commerce.

30.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG expected or should have expected that its acts would have consequences within the United States of America, in the State of Ohio, and in the State of Illinois, and derived substantial revenue from interstate commerce.

31.     Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG exercises dominion and control over Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE

PHARMACEUTICALS, INC., BAYER PHARMA AG, BERLEX LABORATORIES, INC. and BERLEX, INC.

32.     Upon information and belief, Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

33.     Upon information and belief, Defendant BAYER AG is the third largest pharmaceutical company in the world.

34.     Upon information and belief, and at all relevant times Defendant BAYER AG is the parent/holding company of all other named Defendants.

35.     Upon information and belief, at all relevant times, Defendant BAYER AG has transacted and conducted business in the State of Ohio and in the State of Illinois, and derived substantial revenue from interstate commerce.

36.     Upon information and belief, at all relevant times, Defendant BAYER AG expected or should have expected that its acts would have consequences within the United States of America, in the State of Ohio, and in the State of Illinois, and derived substantial revenue from interstate commerce.

37.     Upon information and belief, at all relevant times, Defendant BAYER AG was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute Yasmin and YAZ for use as combination oral contraceptives.

38.     Upon information and belief, at all relevant times, Defendant BERLEX LABORATORIES, INC. was a corporation organized under the laws of Germany, with their headquarters and principal places of business in New Jersey.

39.     Upon information and belief, at all relevant times, Defendant BERLEX LABORATORIES, INC. was integrated into BAYER HEALTHCARE AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

40.     Upon information and belief, at all relevant times, Defendant BERLEX LABORATORIES, INC. has transacted and conducted business in the State of Ohio and in the State of Illinois, and derived substantial revenue from interstate commerce.

41.     Upon information and belief, at all relevant times, Defendant BERLEX LABORATORIES, INC. expected or should have expected that its acts would have consequences within the United States of America, the State of Ohio, the State of Illinois, and derived substantial revenue from interstate commerce.

42.     Upon information and belief, at all relevant times, Defendant BERLEX LABORATORIES, INC. was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute Yasmin and YAZ for use as combination oral contraceptives.

43.     Upon information and belief, at all relevant times, Defendant BERLEX, INC. was a corporation organized under the laws of Germany, with their headquarters and principal places of business in New Jersey.

44.     Upon information and belief, at all relevant times, Defendant BERLEX, INC. was integrated into BAYER HEALTHCARE AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

45.     Upon information and belief, at all relevant times, Defendant BERLEX, INC. has transacted and conducted business in the State of Ohio and in the State of Illinois, and derived substantial revenue from interstate commerce.

46.     Upon information and belief, at all relevant times, Defendant BERLEX, INC. expected or should have expected that its acts would have consequences within the United States of America, in the State of Ohio, and in the State of Illinois, and derived substantial revenue from interstate commerce.

47.     Upon information and belief, at all relevant times, Defendant BERLEX, INC. was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute Yasmin and YAZ for use as combination oral contraceptives.

48.     Defendants, BAYER HEALTHCARE PHARMACEUTICALS, INC., BAYER PHARMA AG, BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE AG, BAYER AG, BERLEX LABORATORIES, INC., and BERLEX INC. shall, hereinafter, be collectively referred to as "Bayer" or "Defendants."

49.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

50.     Plaintiff is filing this Complaint as permitted by Case Management Order # 9 issued by Judge David R. Herndon of this Court.

51.     This Court has personal jurisdiction over Defendants consistent with the United States Constitution and MDL No. 2100 as Plaintiff's claims arise out of Defendants' transaction

of business and the commission of tortious acts within the State of Ohio, and by virtue of Defendants' substantial, continuous and systematic contacts with the State of Ohio and the State of Illinois unrelated to Plaintiff's claims.

52.    The applicable statute of limitations is tolled based on Defendants' fraudulent concealment of the dangers and adverse side effects of the drug Yasmin from Plaintiff as more fully stated herein.  Additionally, for the reasons stated herein, Defendants are equitably estopped from raising the statute of limitations defense.

## FACTUAL BACKGROUND

### Nature of the Case

53.    Tiffini C. Brooks brings this case against Defendants for damages associated with her ingestion of the pharmaceutical drug Yasmin (ethinyl estradiol and drospirenone), an oral contraceptive designed, manufactured, supplied, marketed, and distributed by Defendants. Specifically, Plaintiff Tiffini C. Brooks was diagnosed with gallbladder problems and underwent a laparoscopic cholecystectomy on or about October 13, 2003 as a direct result of her use of Yasmin.

### Bayer's Combined Oral Contraceptives – Yasmin and YAZ

54.    Yasmin and YAZ are birth control pills manufactured and marketed by Bayer. They are combination oral contraceptives, or "COCs," meaning that they contain an estrogen component and a progestin component.  Together, these steroidal components work together in COCs to suppress ovulation, fertilization, and implantation and thus prevent pregnancy.

55.    Yasmin and YAZ were approved by the Food and Drug Administration ("FDA") for marketing in 2001 and 2006 respectively.

9

## Yasmin and YAZ Contain a "Fourth Generation" Progestin

56.     The estrogen component in Yasmin and YAZ is known generically as ethinyl estradiol.  The progestin component is known as drospirenone.  Yasmin contains 0.03 milligrams of ethinyl estradiol, and YAZ contains 0.02 milligrams of ethinyl estradiol.  Yasmin and YAZ products contain 3 milligrams of drospirenone.

57.     Yasmin and YAZ are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

58.     Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill.  As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen.  As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

59.     During this time, new progestins were being developed, which became known as "second generation" progestins (*e.g.*, lovenorgestrel).  These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

60.     During the 1990's, new "third generation" progestins were developed.  Unfortunately, these "third generation" progestins (*e.g.*, gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE").  As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

61.     Yasmin and YAZ contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

62.     However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and YAZ marketed under the trade name Ocella.

63.     Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins.  Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

64.     One possible mechanism of action is that drospirenone interacts differently with ethinyl estradiol compared to other progestins, such that it does not sufficiently counterbalance the clotting effects of estrogen as do other progestins, particularly the second generation progestins.

65.     Another possible mechanism of action is that drospirenone causes an increase in potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

66.     Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia.  If left untreated, hyperkalemia can be fatal.

67.     If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form.  Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause a pulmonary embolism, or can travel to the brain causing stroke.

68.     Indeed, during the brief time that Yasmin and YAZ have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

69.     In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

70.     In February 2003, a paper entitled Thromboembolism Associated With the New Contraceptive Yasmin was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

71.     In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and YAZ have been filed with the FDA.

72.     These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

73.     Some deaths reported occurred in women as young as 17 years old.

74.     Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin and YAZ.

## Over-Promotion of Yasmin and YAZ

75.     Defendants market Yasmin and YAZ as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

76.     However, because Yasmin and YAZ contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

77.     For example, prior to its integration with Defendant Bayer in 2006, Berlex

Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask

about Yasmin, and the difference a little chemistry can make."

78.     In response, on July 10, 2003, the FDA objected to the characterization that

drospirenone was a benefit compared to the progestin used in other combined oral contraceptives

and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial

clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone

in Yasmin is clinically beneficial.  On the contrary, FDA is aware of the added clinical risks

associated with drospirenone[.]"

79.     The FDA's warning letter continued by stating that the advertisement failed "to

communicate that the potential to increase potassium is a risk" or that "increased serum

potassium can be dangerous."

80.     More recently, Defendants advertised that its product YAZ was indicated for

treatment of premenstrual syndrome or "PMS," as opposed to the more serious condition of

premenstrual dysphoric disorder or "PMDD."

81.     Defendants also advertised that YAZ contained the added benefit of preventing or

reducing acne.

82.     In response, on October 3, 2008, the FDA issued another warning letter to

Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading

because it promoted YAZ for medical conditions beyond the limits of the FDA approval, and

adding that "YAZ has additional risks because it contains the progestin, drospirenone ...  which

can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and

health problems."

83.     The FDA further warned in its October 3, 2008 letter that YAZ "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug."

84.     Indeed, the FDA felt Defendants' overpromotion of Yasmin was so severe that it required Bayer to run new TV advertisements to correct the previous misleading YAZ advertisements regarding acne and premenstrual syndrome.

85.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all YAZ advertisements to the FDA for advanced screening for the next six years.

### Plaintiff's Use of Yasmin and Resulting Injuries

86.     As a result of Defendants' claim regarding the effectiveness and safety of Yasmin, Plaintiff Tiffini C. Brooks's medical provider gave her samples of Yasmin which she began using in June 2003.  Plaintiff Tiffini C. Brooks was diagnosed with pancreatitis and gallbladder problems and underwent a laparoscopic cholecystectomy on or about October 13, 2003.

87.     As a direct and proximate result of using Yasmin, Plaintiff Tiffini C. Brooks suffered the injuries described above.

88.     Prior to Plaintiff's use of Yasmin, Defendants knew or should have known that the use of Yasmin created a higher risk of serious personal injury, including pancreatitis, gallbladder problems and pulmonary embolism, than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

89.     Therefore, at the time Plaintiff used Yasmin, Defendants knew or should have known that the use of Yasmin created an increased risk to consumers of serious personal injury, including pancreatitis, liver problems, gallbladder problems, deep vein thrombosis, pulmonary embolism, heart attacks, stroke, and even death.

90.     Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yasmin, Defendants failed to adequately warn Plaintiff Tiffini C. Brooks and/or her health care providers of said serious risks before she used the product.

91.     Had Plaintiff Tiffini C. Brooks and/or her health care providers known of the increased risks and dangers associated with Yasmin, she would not have used the product and would not have suffered pancreatitis and gallbladder problems resulting in a laparoscopic cholecystectomy in October 2003.

92.     As a direct and proximate result of her use of Yasmin, Plaintiff Tiffini C. Brooks has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment, including but not limited to pancreatitis and gallbladder problems, which may have caused permanent effects, and which may continue in the future to cause her physical effects and damage which will affect her throughout her lifetime.

93.     Further, as a direct and proximate result of her use of Yasmin, Plaintiff Tiffini C. Brooks has suffered significant mental anguish and emotional distress and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

94.     Plaintiff Tiffini C. Brooks has also incurred medical expenses and other economic harm and will continue to incur such expenses in the future, as a direct and proximate result of her use of Yasmin.

## FIRST CAUSE OF ACTION

### Strict Products Liability
### Defective Manufacturing

95.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

96.     Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Yasmin.

97.     The Yasmin oral contraceptive manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was defective in its manufacture and construction such that it was unreasonably dangerous, was not fit for the ordinary purpose for which it was intended, and/or did not meet the reasonable expectations of an ordinary consumer.

98.     The Yasmin oral contraceptive manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, was defective in its manufacture and construction as described at the time it left the Defendants' control.

99.     As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Tiffini C. Brooks suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

100.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION

### Strict Products Liability
### Defect in Design or Formulation

101.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

102.   Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

103.   The Yasmin oral contraceptive manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants was defective in its design such that it was unreasonably dangerous, was not fit for the ordinary purpose for which it was intended, and/or did not meet the reasonable expectations of an ordinary consumer.

104.   At the time Defendants manufactured, designed, distributed, sold, and/or supplied the Yasmin oral contraceptive into the stream of commerce, a safer, more practical, alternative design was available.

105.   The Yasmin oral contraceptive manufactured, designed, sold, distributed, supplied, and/or placed in the stream of commerce by Defendants, was defective in design as described above at the time it left the Defendants' control.

106.   As a direct and proximate result of Plaintiff's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Tiffini C. Brooks suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

107.   Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

## THIRD CAUSE OF ACTION

### Strict Products Liability
### Defect Due to Inadequate Warning

108.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

109.   Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin.

110.   The Yasmin oral contraceptive manufactured and supplied by Defendants was defective due to inadequate warning or instruction, because Defendants knew or should have known that the product was unreasonably dangerous in that it created a substantial increased risk of serious bodily harm and death to reasonably foreseeable consumers such as Plaintiff Tiffini C. Brooks, and Defendants failed to adequately warn consumers and/or their health care providers of such increased risk.

111.   The Yasmin oral contraceptive manufactured and supplied by Defendants was also defective due to inadequate post-marketing warning or instruction, because, after Defendants knew or should have known of the risk of serious bodily harm and death from the use of Yasmin, Defendants failed to provide adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury and death.

112.   As a direct and proximate result of Plaintiff Tiffini C. Brooks's use of Yasmin as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff Tiffini C. Brooks suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

113.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

### FOURTH CAUSE OF ACTION

**Strict Products Liability**
**Defect Due to Nonconformance with Representations**

114.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

115.    Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Yasmin, and they made representations regarding the character or quality of Yasmin.

116.    The Yasmin oral contraceptive manufactured and supplied by Defendants was defective in that, when it left the hands of Defendants, it did not conform to representations made by Defendants concerning the product.

117.    Plaintiff Tiffini C. Brooks justifiably relied upon Defendants' representations regarding the Yasmin oral contraceptive when she used Yasmin.

118.    As a direct and proximate result of Plaintiff's use of Yasmin and her reliance on Defendants' representations regarding the character and quality of Yasmin, Plaintiff Tiffini C. Brooks suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

119.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION

### Strict Products Liability
### Defect Due to Failure to Adequately Test

120.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

121.    Defendants advised consumers and the medical community that Yasmin contained the same safety profile as other oral hormonal birth control pills.  However, Defendants failed to adequately test the safety of Yasmin versus other oral hormonal birth control pills.

122.    Had Defendants adequately tested the safety of Yasmin versus other oral hormonal birth control pills and disclosed the results to the medical community or the public, Plaintiff would not have used, and her physician would not have given her samples of Yasmin.

123.    As a direct and proximate result of Defendants' failure to adequately test the safety of Yasmin versus other oral hormonal birth control pills, Plaintiff Tiffini C. Brooks suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

124.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

## SIXTH CAUSE OF ACTION

### Negligence

125.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

126.     Defendants had a duty to exercise reasonable care in the manufacture, design, sale, distribution, supply, marketing, and/or placement of Yasmin into the stream of commerce, including a duty to ensure that its product did not pose a significantly increased risk of bodily harm and adverse events.

127.     Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yasmin into interstate commerce in that Defendants knew, or should have known, that the product caused such significant bodily harm or death and was not safe for use by consumers.

128.     Defendants also failed to exercise ordinary care in the labeling of Yasmin and failed to issue to consumers and/or their health care providers adequate warnings of the increased risk of serious bodily injury or death due to the use of Yasmin.

129.     Despite the fact that Defendants knew or should have known that Yasmin posed a serious increased risk of bodily harm to consumers, Defendants continued to manufacture and market Yasmin for use by consumers.

130.     Defendants knew or should have known that consumers, such as Plaintiff Tiffini C. Brooks, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

131.     As a direct and proximate result of Defendants' negligence, Plaintiff Tiffini C. Brooks suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

132.     Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

## SEVENTH CAUSE OF ACTION

### Breach of Express Warranty

133.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

134.     Defendants expressly warranted that Yasmin was a safe and effective prescription oral contraceptive.

135.     The Yasmin birth control product manufactured and sold by Defendants did not conform to these express representations because it caused serious injury to consumers who used the product when taken in the recommended dosages.

136.     As a direct and proximate result of Defendants' breach of warranty, Plaintiff Tiffini C. Brooks suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

137.     Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

## EIGHTH CAUSE OF ACTION

### Breach of Implied Warranty

138.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

139.    At the time Defendants manufactured, marketed, sold, and distributed Yasmin, Defendants knew of the use for which Yasmin was intended and impliedly warranted Yasmin to be of merchantable quality, fitness, and safe for such use.

140.    Plaintiff Tiffini C. Brooks and her health care provider reasonably relied upon the skill and judgment of Defendants as to whether Yasmin was of merchantable quality and safe for its intended use and upon Defendants' implied warranty as to such matters.

141.    Contrary to the implied warranty, Defendants' product Yasmin was not of merchantable quality or safe for its intended use, because it was unreasonably dangerous as described herein.

142.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff Tiffini C. Brooks suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

143.    Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

## NINTH CAUSE OF ACTION

### Negligent Misrepresentation and/or Fraud

144.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

145.    Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yasmin and, while engaged in the course of such business, made representations to Plaintiff and her physician regarding the character and/or quality of Yasmin for guidance in their decision to select Yasmin for Plaintiff's use.

146.     Specifically, Defendants represented that their product was just as safe, and just as effective or more effective, than other birth control products on the market.

147.     Defendants' representations regarding the character or quality of Yasmin were untrue.

148.     Defendants had actual knowledge based upon studies, published reports and clinical experience that its product Yasmin created an unreasonable increased risk of serious bodily injury and death to consumers, or should have known such information.

149.     Defendants negligently and/or intentionally misrepresented or omitted this information in its product labeling, promotions and advertisements and instead labeled, promoted and advertised its product as safe and effective in order to avoid losses and sustain profits in its sales to consumers.

150.     In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to their intended recipients, including Plaintiff and her physician.

151.     Defendants' fraudulent concealment tolled the statute of limitations because only Defendants knew the true dangers associated with the use of Yasmin as described herein. Defendants did not disclose this information to the Plaintiff, her prescribing physicians, the healthcare community and the general public. Without full knowledge of the dangers of Yasmin, Plaintiff's claims could not be evaluated.

152.     Plaintiff Tiffini C. Brooks and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in its labeling, advertisements, and promotions concerning the serious risks posed by the product.  Plaintiff Tiffini C. Brooks reasonably relied upon Defendants' representations to her and/or her health care providers that

Yasmin was just as safe and effective as other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

153.   As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations, Plaintiff Tiffini C. Brooks suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

154.   Defendants' conduct as alleged in this Complaint demonstrates that Defendants acted maliciously, wantonly, or with recklessness suggesting an improper motive so as to warrant the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.   Compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2.   Medical expenses and other economic damages in an amount to be determined at trial of this action;

3.   Punitive and exemplary damages;

4.   Attorneys' fees, expenses, and costs of this action; and

5.   Such further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: August 3, 2011                    Respectfully submitted,

                                         /s/ Roopal P. Luhana
                                         **CHAFFIN LUHANA LLP**
                                         Eric T. Chaffin, Esquire
                                         Roopal P.  Luhana, Esquire
                                         600 Third Avenue
                                         12th Floor
                                         New York, New York 10016
                                         Tel.: (347) 269-4472
                                         Fax: (888) 499-1123
                                         chaffin@chaffinluhana.com
                                         luhana@chaffinluhana.com

                                         *Attorneys for Plaintiff*


4828-2983-0151, v. 1